# EXHIBIT A

FILED
2/26/2025 12:29 PM
ERIN CARTWRIGHT WEINSTEIN
Clerk of the Circuit Court
Lake County, Illinois

**IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT**
**LAKE COUNTY, ILLNOIS**

| | | |
|---|---|---|
| EDWARD "COACH" WEINHAUS | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.     **2025LA00000164** |
| | ) | |
| BARRY CHERNAWSKY | ) | Jury Trial Demanded |
| Defendant, | ) | |
| | ) | |
| And 8 RESPONDENTS in Discovery Designated Herein | ) | |

### VERIFIED COMPLAINT
#### (Conversion, Replevin, Negligence, And other torts for Damages Greater than $50,000)

NOW COMES, Plaintiff Edward "COACH" Weinhaus by his attorney and in support of this Verified Complaint, respectfully states as follows:

### INTRODUCTION

The Plaintiff was reunited as the primary parent of two of his five children with no small help from his former mother-in-law (the children's grandmother and the Named Defendant's then spouse). Plaintiff looked to commemorate the event by commissioning two paintings by world-renowned portraitist Olga Krimon. Upon purchase, he granted them in life estate to his former mother in law, to revert back to Plaintiff. Upon her passing, the Named Defendant (and potentially one or more co-conspirators) sought to remove Plaintiff's ownership of the priceless paintings which have since become part of a Hollywood production under development. This action follows.

## I.     General Allegations As To All Parties

### A.  Parties

1)      Plaintiff Edward "Coach" Weinhaus is a citizen of Missouri, and over the age of 18 years.

2)      Named Defendant Barry Chernawsky is a citizen of Illinois and resides in Highland Park, Illinois in Lake County.

3)      The property in question, two paintings, were last known to be located at the residence of the Named Defendant in Highland Park, Illinois.

4)      Un-named defendants, whose identities will be revealed through discovery, took their actions that created liability in this matter in Lake County, Illinois.

5)      Pursuant to 735 ILCS 5/2-402, Plaintiff designates the following people as Respondents in Discovery ("RESPONDENTS") because they are believed by the plaintiff to have information essential to the determination of who should properly be named as additional defendants in the action.

6)      The RESPONDENTS in Discovery are:

a)      David Cogan [Scottsdale, AZ]

b)      Jaclyn Chernawsky (née Batt) [1085 Meadowbrook Lane, Deerfield, IL 60015].

c)      Manny W. Weinhaus [10374 Olive St. Rd, Apt 446, St. Louis, MO 63146].

d)      Natalie B. Cohen (née Chernawsky) [99 Roger Williams Ave, Highland Park,

IL 60035]

e)      Paul Chernawsky [1085 Meadowbrook Lane, Deerfield, IL 60015]

f)      Solomon J. Weinhaus [99 Roger Williams Ave, Highland Park, IL 60035]

g)      Sophia Cogan (née Chernawsky) [Scottsdale, AZ]

h)      Steven Cohen [99 Roger Williams Ave, Highland Park, IL 60035]

**B. Jurisdiction, Venue, and Jury Trial**

7)	The Named Defendant permanently resides in Lake County, Illinois. The actions took place primarily in Lake County, IL. The property remained in Lake County, Illinois for the entire length of the life estate. Therefore, this Court has *in personam and in rem* jurisdiction over the Named Defendant and it is an appropriate venue.

8)	Plaintiff requests a trial by jury.

## II. Statement of Facts

9)	In June 2019, Plaintiff became full primary residential parent of one of his five children ("MW") memorialized gained by agreement of the Plaintiff and the child's other parent rather than any dispute.

10)	Little known to Plaintiff was the involvement of his ex-mother-in-law, Adrienne Chernawsky (hereafter "LIFE TENANT") in the role she played in helping the mutual object of their love – MW.

11)	Thereafter, Plaintiff and LIFE TENANT established a semi-regular communication path to discuss the challenges of MW's growth into adulthood, then a high school junior.

12)	This period allowed Plaintiff and LIFE TENANT to rekindle the friendshop bond they had shared in love for the Plaintiff's children/LIFE TENANT's grandchildren while sharing relation through marriage.

13)	Although the friendship had broken down due to the circumstances around the family breakdown, by the time MW pursued his high school equivalency a year early, LIFE TENANT texted Plaintiff:





I do a lot of creative writing and would like to write., entitled...
" A Love Story to my
Ex Son In-law "

14)    Soon thereafter, LIFE TENANT and Named Defendant visited Plaintiff's son MW

in St. Louis where Named Defendant, LIFE TENANT, and Plaintiff celebrated the graduation with

Plaintiff's family as pictured from July 10, 2020.



15) During the same period, MW's one-year-younger brother LW began experiencing issues whereby he too would be helped if he could get into Plaintiff's care. Again, LIFE TENANT was instrumental with the change happening without any dispute. LW joined Plaintiff full-time by agreement in August 2020.

16) Again on August 5, 2020, Plaintiff, LIFE TENANT, Named Defendant, and child (this time LW) dined together to celebrate.

17) Plaintiff was grateful to LIFE TENANT for her help in reuniting two of the five children with their father.

18) In the same month, he commissioned two portraits to be painted by world-renowned artist Olga Krimon ("ARTIST") to commemorate the milestones in the children's lives.

19) ARTIST used oil on copper to produce the paintings ("PAINTINGS") based on two "family classic" photos of MW and LW.

20) Plaintiff also paid for the PAINTINGS to be framed by ARTIST.

21) Plaintiff purchased the PAINTINGS and the full copyright to the works due to his intense emotional attachment to the impact that LIFE TENANT had on his and all of his children's lives.

22) Upon receipt of the PAINTINGS, Plaintiff delivered them to the joint home of Named Defendant and LIFE TENANT with a letter granting LIFE TENANT the property interest of a Life Estate with Plaintiff as Remainderman.

23) On or just after September 17, 2020 (LIFE TENANT's birthday), Named Defendant and LIFE TENANT received PAINTINGS and the communicating announcing the Life Estate and Remainderman, a picture of which is included here:



24)     The Life Estate grant says:

"For your birthday, I am granting you a 'Life Estate' to display these originals with the Remainderman to be me and my heirs thereafter."

25)     The grant includes a description of the paintings and the name of ARTIST.

26)     Plaintiff and LIFE TENANT affirmed the nature of the grant through text message and conversation thereafter and introduced LIFE TENANT to ARTIST (at her request) with whom Plaintiff had excellent, professional relations.

27)     Named Defendant and LIFE TENANT hosted Plaintiff and LW in their home on September 30, 2020 to view the PAINTINGS *in situ*, at Named Defendant's then- and current-residential address in Highland Park. As pictured here in a photo Plaintiff took:



28)     LIFE TENANT's posing with the PAINTINGS shows how much she valued them too, which made them even more special to the bond between Plaintiff and LIFE TENANT and their shared mission of helping the Plaintiff's children.

29)     Named Defendant also enjoyed the PAINTINGS in their home in reliance on the Life Estate structure created by Plaintiff with Plaintiff as the Remainderman.

30)     LIFE TENANT and Plaintiff continued to grow in their camaraderie to help MW and LW (and the other children when possible), speaking nearly daily until the summer of 2022 when LW left to attend university.

31)     LIFE TENANT briefly made mention of her declining health in January 2023 in jest, noting "I am still above ground!" by text message to Plaintiff.

32)     On February 15, 2023, Plaintiff sent his last *direct* message to LIFE TENANT reminding her of Plaintiff's youngest child's birthday but did not receive a response other than through a proxy.

33)     Plaintiff kept in touch with LIFE TENANT through Named Defendant's son ("DEFENDANT's SON").

**Plaintiff Becomes The Owner of PAINTINGS on February 27, 2023**

34)     LIFE TENANT passed away in the evening of February 27, 2023.

35)     On February 27, 2023, Plaintiff's Remainderman interest made him the owner of the PAINTINGS by operation of law.

36)     Named Defendant immediately took PAINTINGS into his own possession and control to the detriment of Plaintiff's Remainderman interest.

**"THOSE PAINTINGS" Professional and Hollywood Production Special Value**

37)     Plaintiff had lent use of the copyright of the images of the PAINTINGS to his single member limited liability company, LegalSolved LLC for purposes of establishing a "Legal Art"

division in 2021.

38)     On or about March 9th, 2023, Plaintiff, a Hollywood entertainment attorney, producer, and writer, began pre-production of a feature draft entitled "Those Paintings" to describe the story of PAINTINGS.

39)     The production, Plaintiff's reputation in the entertainment industry, and Plaintiff's profession has been hampered due to the lack of access to the PAINTINGS and the failure to have them returned.

40)     Plaintiff had and has a reasonable expectation to the return of the PAINTINGS for the purposes of his professional and Hollywood endeavors.

### Plaintiff Makes Attempts To Reclaim PAINTINGS

41)     Plaintiff attended LIFE TENANT's funeral and burial.

42)     On May 6, 2023 and October 4, 2023, Plaintiff, via the undersigned counsel, reached out to the Named Defendant via letter to request a return of the PAINTINGS to Plaintiff.

43)     Named Defendant refused to return the PAINTINGS and stated they were no longer in his possession.

44)     At all times, Plaintiff has sought a solution to the loss of PAINTINGS without invoking the Court's power.

45)     Named Defendant, has been unwilling to make even the slightest of acknowledgement of Plaintiff's loss nor his own responsibility for the PAINTINGS once he took control of Plaintiff's property after having enjoyed them.

46)     At all times relevant, Named Defendant has resided at the same residence where the PAINTINGS were pictured above.

### Damages

47)     Plaintiff has incurred significant loss not having the PAINTINGS.

48)     Plaintiff has been unable to enjoy the artworks physically due to Named Defendants actions.

49)     Plaintiff has been unable to finish the Hollywood production, "THOSE PAINTINGS" without actual access to the PAINTINGS which are a central part of the story, harming Plaintiff's earnings and business relationships with others involved in the production.

50)     Plaintiff has suffered professional and reputational harm when his PAINTINGS were kept from him after he promoted them as part of his business.

51)     Plaintiff has suffered deep emotional harm such as sadness and morose due to being unable to properly mourn the woman who became his best friend and supporter as a parent – LIFE TENANT.

52)     Plaintiff's own ability to connect to MW and LW as a parent is severely curtailed due to the PAINTINGS absence. The removal of Plaintiff's access to the PAINTINGS sends the message that Plaintiff cannot even protect their images thus lowering their esteem for Plaintiff causing him physical suffering due to emotional damage such as insomnia.

53)     Plaintiff's plan for a series of PAINTINGS to also commemorate the reintegration of MW's and LW's three other siblings in their lives is further thwarted, causing emotional harm to Plaintiff.

54)     Thus, Plaintiff has a deep sentimental and emotional attachment to the PAINTINGS.

55)     Finally, the PAINTINGS have some economic value as being commissioned by one of the world's premier artists – ARTIST: an oil portraitist, single mother whose commitment to the craft and skill continues to accrue her accolades and admiration from world art critics. She is a master who teaches others how to be great as well.

56)     The original paintings are, for reasons both economic and due to special value to the Plaintiff, are priceless.

57) Plaintiff has incurred costs and attorney fees in bringing this action.

58) The paragraphs in this subsection entitled DAMAGES shall hereinafter be refered to as "PLAINTIFF'S DAMAGES."

### Count I Replevin Against Barry Chernawsky

59) Plaintiff re-states and re-alleges all prior paragraphs as if re-stated and re-alleged in this Count.

60) Plaintiff has right to immediate possession of PAINTINGS.

61) Named Defendant has wrongfully detained PAINTINGS.

62) PAINTINGS are specific and identifiable pieces of personal property.

63) PAINTINGS have special value beyond monetary worth; they are priceless.

64) Plaintiff requests REPLEVIN REMEDIES;

    a) a return of the PAINTINGS;

    b) loss of use damages for the period of the wrongful detention;

    c) consequential damages from the retention;

    d) costs for locating and discovering the PAINTINGS;

    e) Interest on all available amounts.

**WHEREFORE,** Plaintiff respectfully requests this Court grant the following relief:

a) Enter judgment against the Named Defendant for this Count in Replevin

b) Enter judgment against the Named Defendant for REPLEVIN REMEDIES.

c) Enter judgment against the Defendant in an amount to compensate Plaintiff for PLAINTIFF'S DAMAGES;

d) Enter judgment against the Defendant for punitive damages;

e) Enter judgment against the Defendants for all other such and further relief as is deemed equitable and just both in equity and in law (and for damages as allowable in TROVER in the

alternative to REPLEVIN REMEDIES should the PAINTINGS have been destroyed).

### Count II Conversion against Barry Chernawsky

(65)     Plaintiff re-states and re-alleges all prior paragraphs as if re-stated and re-alleged in this Count.

(66)     As of February 27, 2023, Plaintiff had right to the PAINTINGS.

(67)     Named Defendant knew of Plaintiff's rights to the PAINTINGS.

(68)     Named Defendant prevented Plaintiff from gathering the PAINTINGS upon the death of LIFE TENANT.

(69)     Upon information and belief, Named Defendant told one or more of Plaintiff's children that Named Defendant would call the police on Plaintiff if he approached the property where the PAINTINGS had become Plaintiff's property.

(70)     Named Defendant refused to allow Plaintiff access to the PAINTINGS knowing they were Plaintiff's property and knowing the emotional value of the PAINTINGS.

(71)     Named Defendant's actions to refuse Plaintiff return of the PAINTINGS substantially interfere with Plaintiff's rights to the PAINTINGS.

(72)     Named Defendant intended to exercise his dominion and control over the PAINTINGS by removing Plaintiff's access to them in whole.

(73)     Plaintiff has no intent on "double recovery" and in the event that different remedies avail themselves for different counts, Plaintiff will avail himself of ensuring only single recovery by remedy selection.

**WHEREFORE**, Plaintiff respectfully requests this Court grant the following relief:

a) Enter judgment against the Named Defendant for this Count in Conversion

b) Enter judgment against the Defendant in an amount to compensate Plaintiff for PLAINTIFF'S DAMAGES;

c)  Enter judgment against the Defendant for punitive damages;

d)  Enter judgment against the Defendants for all other such and further relief as is deemed equitable and just both in equity and in law (and for damages as allowable).

## Count III Negligence against Barry Chernawsky

74)     Plaintiff re-states and re-alleges all prior paragraphs as if re-stated and re-alleged in this Court.

75)     Named Defendant knowingly allowed PAINTINGS into his home for safe-keeping during LIFE TENANT's life tenancy.

76)     Named Defendant invited Plaintiff into his home to view the PAINTINGS during the life tenancy.

77)     Named Defendant was fully aware the nature of the life tenancy – that is that the PAINTINGS were to revert Plaintiff on LIFE TENANT's passing as the Remainderman.

78)     Named Defendant gained from the Life Tenancy, namely the proud display of the PAINTINGS in his home and was thus compensated for the arrangement, even if the LIFE TENANT was his wife.

79)     Named Defendant enjoyed the benefits of pseudo-possession of the PAINTINGS during the LIFE TENANT'S possession through enjoying them visually.

80)     Thus, when the PAINTINGS became Plaintiff's property in Named Defendant's home on February 27, 2023, Named Defendant owed Plaintiff a duty to keep the PAINTINGS safe and a duty of reasonable care appropriate to the circumstances.

81)     However, Named Defendant did not protect the PAINTINGS.

82)     According to Named Defendant they were stolen or destroyed.

83)     The PAINTINGS' having been stolen or destroyed was fully foreseeable and due to the fault of Named Defendant.

84) Upon information and belief, Named Defendant allowed someone he knew to be *willing* to steal or destroy PAINTINGS of Plaintiff's children to *actually* steal or destroy PAINTINGS.

85) Thus, Named Defendant breached his duty to Plaintiff to protect the PAINTINGS with reasonable care.

86) Named Defendant's breach of his duty led to the actual damage to the PAINTINGS, that they have either been stolen or destroyed as a foreseeable result of Named Defendant's actions.

87) Thus Named Defendant was Negligent.

88) Named Defendant's actions in breaching his duty to Plaintiff caused PLAINTIFF'S DAMAGES.

**WHEREFORE**, Plaintiff respectfully requests this Court grant the following relief:

a) Enter judgment against the Named Defendant for this Count in Negligence

b) Enter judgment against the Defendant in an amount to compensate Plaintiff for PLAINTIFF'S DAMAGES;

c) Enter judgment against the Defendant for punitive damages;

d) Enter judgment against the Defendants for all other such and further relief as is deemed equitable and just both in equity and in law (and for damages as allowable).

## Count IV Aiding And Abetting Conversion against Barry Chernawsky, THIRD PARTY

### CONVERTER, and CO-CONSPIRATORS 1-3

#### *In the Alternative to Count II Conversion*

89) Plaintiff re-states and re-alleges all prior paragraphs as if re-stated and re-alleged in this Court except for those claiming direct Conversion by Named Defendant in Count II and for those that claim the PAINTINGS are still at the Named Defendant's property.

90) This count is plead in the alternative to Conversion (Count II).

91) An as-yet-undiscovered third party ("THIRD PARTY CONVERTER") took control

of the PAINTINGS which were Plaintiff's rightful property.

92)     The THIRD PARTY CONVERTER knew the PAINTINGS were not his/her own when taking them.

93)     The THIRD PARTY CONVERTER's taking of the PAINTINGS is to the detriment of all of Plaintiff's ability to enjoy the benefits of ownership of them.

94)     Thus, THIRD PARTY CONVERTER converted the PAINTINGS.

95)     Named Defendant had full knowledge that THIRD PARTY CONVERTER had access to the PAINTINGS and that THIRD PARTY CONVERTED then took (and possible then destroyed) the PAINTINGS.

96)     Named Defendant knew before, during, and after THIRD PARTY CONVERTER's wrongful acts that THIRD PARTY CONVERTER could and would steal and/or destroy the PAINTINGS.

97)     Nonetheless, Named Defendant put THIRD PARTY CONVERTER in control of the PAINTINGS after the death of LIFE TENANT, when the PAINTINGS were Plaintiff's property.

98)     Named Defendant sought to conceal and did conceal THIRD PARTY CONVERTER's acts to convert the PAINTINGS at the time and thereafter.

99)     Named Defendant took no acts to stop THIRD PARTY CONVERTER from converting the PAINTINGS when Named Defendant had a duty to do so.

100)    Instead, Named Defendant sought to conceal the identity of THIRD PARTY CONVERTER to prevent Plaintiff from access to the PAINTINGS.

101)    Named Defendant's actions were a substantial factor in causing the conversion of the PAINTINGS and Plaintiff's loss of access to them.

102)    As a result, Plaintiff suffered PLAINTIFF's DAMAGES.

103)     Plaintiff is now entitled to conduct discovery to ensure proper service and amendment to find the identity of THIRD PARTY CONVERTER.

**WHEREFORE**, Plaintiff respectfully requests this Court grant the following relief:

e) Enter judgment against the Named Defendant for this Count in Aiding and Abetting Conversion.

f) Enter judgment against the Defendant in an amount to compensate Plaintiff for PLAINTIFF'S DAMAGES;

g) Enter judgment against the Defendant for punitive damages;

h) Enter judgment against the Defendants for all other such and further relief as is deemed equitable and just both in equity and in law (and for damages as allowable).

### Count V Conspiracy to Conversion against Barry Chernawsky

#### *In the Alternative to Count II for Conversion*

104)     Plaintiff re-states and re-alleges all prior paragraphs as if re-stated and re-alleged in this Court except for those claiming direct Conversion by Named Defendant in Count II and for those that claim the PAINTINGS are still at the Named Defendant's property.

105)     This count is plead in the alternative to Conversion (Count II).

106)     THIRD PARTY CONVERTER, CO-CONSPIRATORS 1-3, and Named Defendant (together "CONSPIRATORS") agreed to allow THIRD PARTY CONVERTER to convert the PAINTINGS and to disallow Plaintiff or his agents from accessing them.

107)     The CONSPIRATORS knew the PAINTINGS were Plaintiff's property and knew that THIRD PARTY CONVERTER wanted to ensure Plaintiff never had access to the PAINTINGS again.

108)     The CONSPIRATORS agreed to allow THIRD PARTY CONVERTER to convert (through either theft or destruction or both -- the method which is still as of yet unknown to the

Plaintiff).

109)     The CONSPIRATORS agreed to keep the PAINTINGS from Plaintiff during the time from the LIFE TENANT's passing until the time the THIRD PARTY CONVERTER converted them to further the conspiracy.

110)     The CONSPIRATORS kept the information about the PAINTINGS secret from Plaintiff to further their conspiracy.

111)     The CONSPIRATORS agreed to give THIRD PARTY CONVERTE exclusive access to the PAINTINGS for the sole purpose of their conversion to further the conspiracy.

112)     The THIRD PARTY CONVERTER thus committed the act of conversion by taking or destroying the PAINTINGS to further the conspiracy.

113)     The acts of the CONSPIRATORS prevented Plaintiff from remedying the conversion before, during, or after which has caused the PLAINTIFF'S DAMAGES.

114)     None of the CONSPIRATORS, including Named Defendant, sought to withdraw from the conspiracy, even when given the chance to do so.

115)     Plaintiff is now entitled to conduct discovery to ensure proper service and amendment to find the identity of THIRD PARTY CONVERTER and CO-CONSPIRATORS 1-3.

**WHEREFORE**, Plaintiff respectfully requests this Court grant the following relief:

i) Enter judgment against the Named Defendant, THIRD PARTY CONVERTER, and CO-CONSPIRATORS 1-3 for this Count in Conspiracy.

j) Enter judgment against the Defendant in an amount to compensate Plaintiff for PLAINTIFF'S DAMAGES;

k) Enter judgment against the Defendant for punitive damages;

l) Enter judgment against the Defendants for all other such and further relief as is deemed equitable and just both in equity and in law (and for damages as allowable).

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demands a trial by jury on all issues herein triable of right by a jury.

February 24, 2025

\s\ Ryan M. Cleys

Ryan M. Cleys #6326726
Cook County No. 63241
115 East Irving Park Rd. #936
Streamwood, IL 60107
Ph. (847) 217-7170
Fax. (847) 728-8003
Rmcleys@gmail.com

*Attorney for Plaintiff*
## VERIFICATION BY CERTIFICATION

Under penalties as provided by law, the undersigned certifies on behalf of himself and all parties he represents that the statements set forth in this instrument are true and correct, except as to those matters which are stated to be on information and belief, and as to such matters the undersigned believes the same to be true.

/s/ Edward "Coach" Weinhaus

EDWARD "Coach" WEINHAUS

EDWARD "Coach" WEINHAUS
Illinois No. 6333901
11500 Olive Blvd. Suite 133
Saint Louis MO 63141
(314) 580-9580 (p)
eaweinhaus@gmail.com